UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CINDY CORAZZINI, Individually and
on behalf of all others similarly situated,

                        Plaintiff,

     v.                                      1:09-CV-0199 (LEK/RFT)

LITTON LOAN SERVICING LLP,
HSBC BANK USA, NATIONAL
ASSOCIATION, As Trustee under the
Pooling and Servicing Agreement dated
August 1, 2006, Ace Securities Corp. Home
Equity Loan Trust Series 2006-FM1,
Asset Backed Pass-Through Certificates.

                        Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Before the Court are Motions to dismiss brought by Defendants Litton Loan Servicing LP ("Litton") and HSBC Bank USA, National Association ("HSBC") (collectively, "Defendants"), which seek partial and full dismissal of Plaintiff Cindy Corazzini's ("Plaintiff") Complaint (Dkt. No. 1). Pursuant to Federal Rules of Civil Procedures 8(a), 9(b) and 12(b)(6), Litton moves to dismiss six of Plaintiff's nine Counts, and HSBC moves to dismiss all Counts against it. (Dkt. Nos. 21-2). Per Plaintiff's Complaint, the Court exercises jurisdiction over this case on the due to Plaintiff's federal claims under the Real Estate Procedures Act, 12 U.S.C. § 2601, ("RESPA"), Truth in

1

Lending Act, 15 U.S.C. § 1601, ("TILA") and Fair Debt Collection Practices Act, 15 U.S.C. §1692, ("FDPCA"). See 28 U.S.C. §§ 1331, 1343, 1367; 15 U.S.C. 1692k.

**II.    BACKGROUND**

Plaintiff brings this action on the basis of events surrounding the payment of her mortgage, particularly concerning fees and charges she alleges that she faced after a period of non-payment of the monthly amount due under the terms of her note and mortgage. Defendant Litton is the servicer of her mortgage loan during the relevant period for this action. Defendant HSBC, as Trustee under the Pooling and Servicing Agreement of August 1, 2006, ACE Securities Corporation Home Equity Loan Trust Series 2006-FM1, Asset Backed Pass-Through Certificates, is the underlying holder of Plaintiff's note and mortgage.

On April 12, 2006, Plaintiff executed an Adjustable Rate Note with Fremont Investment & Loan for a principal sum of $536,000. Compl. ¶¶ 34-35; Litton Mot. at 2. She alleges that the note provided that upon the non-payment of the full amount of a monthly payment by the end of 15 days from the due date for that payment, a late fee of 5% of the amount due of principal and interest would be imposed. Compl. ¶¶ 36-37. Plaintiff asserts that after she failed to make monthly payments in October through December of 2008, Defendant Litton imposed fees and charges substantially in excess of 5%. Id. ¶¶ 38-39. In November of 2008, Plaintiff asserts that she sent a letter to Litton which disputed these fees. The response she received from Litton, dated December 9, 2008, is alleged to have maintained that Plaintiff owed excessive fees and other charges and misstated Plaintiff's loan balance. Id. ¶¶ 41-50, 59-61.

Along with these factual allegations as to her dealings with Litton, Plaintiff contends that

2

"Defendants have engaged in a uniform scheme and course of conduct to inflate its [sic] corporate profits by charging and collecting various fees not authorized by the loan documents or applicable law." While Plaintiff provides no factual basis for this allegation, she lists components of this scheme as: "failing to credit payments in a timely fashion," "failing to provide customers with timely or clear information about the timing and amount of payments owed," "misapplying payments received," "miscalculation of contractually due late fees," "failing to properly calculate late fees," and "reporting and threatening to report inaccurate information about borrower[s]' credit status and credit history to third parties . . . ." Compl. ¶ 32.

      Based on these allegations, Plaintiff, under Federal Rule of Civil Procedure 23, purports to bring her suit as a class action, "individually and on behalf of all others similarly situated, whose loans were services by Litton Mortgage and or held by HSBC within one year of the date of filing" and whose loans were "in default or treated as being in default . . . and who incurred or were assessed late fees and or default related fees" and those "fees were incurred or were assessed in violation of law or contract . . ." or "who otherwise were affected . . . by one of the additional practices that are the subject of this complaint." Id. ¶ 16. Plaintiff variously argues in support of certification by the Court, asserting that her suit meets the prerequisites of Rule 23(a) as well as being appropriate under Rule 23(b).

      Plaintiff's suit was filed on February 18, 2009. The following Counts are brought against both Defendants, unless differently noted: Count I, directed solely at Litton, alleges the Defendant violated the FDCPA; Count II alleges that Defendants violated RESPA; Count III asserts a violation of TILA; Count IV asserts a breach of contract claim; Count V alleges intentional misrepresentation by the Defendants; Count VI asserts a negligence claim, initially against both Defendants but, per

3

Plaintiff's Response, is posed only against HSBC; Count VII, nonetheless, asserts a gross negligence claim against both Defendants; Count VIII alleges breach of an implied covenant of good faith and fair dealing; Count IX alleges a violation of New York General Business Law § 349; and Count X asserts a claim of negligent hiring against HSBC only.  The instant Motions were brought by Defendants on June 11, 2009.  At present, Litton has moved to dismiss the FDCPA, intentional misrepresentation, negligence, gross negligence, good faith and fair dealing, and GBL §349 claims.  HSBC seeks dismissal of all claims made against it.

### III.     STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a district court is required to "accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[ ]." Ruggles v. Wellpoint Inc., 253 F.R.D. 61, 65 (N.D.N.Y. 2008) (citing FED. R. CIV. P. 12(b)(6)); Charles W. v. Maul, 214 F.3d 350, 356 (2d Cir. 2000) (noting that Rule 12(b)(6) requires that the court "read the complaint liberally, drawing all reasonable inferences in plaintiff's favor."). Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand Defendants' Motions, the Plaintiff must plead facts sufficient to establish that her claim for relief is more than just conceivable, and is in fact "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under the standards clarified by Ashcroft v. Iqbal, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. 1937, 1949 (2009).  The "tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, in reviewing Defendants' Motions, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Next, if plaintiff provides well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.' Id. (quoting FED R. CIV. P. 8(a)(2)). Iqbal cautions that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id.

In determining whether a complaint is sufficiently plausible, a district court is typically required to look only at "the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Thus, matters outside the pleadings are normally excluded from review unless the court decides to treat the motion as one for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b)(6). However, "[i]n certain circumstances, the court [may] permissibly consider documents other than the complaint [when]. . . [d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading." Roth, 489 F.3d at 509 (2d Cir. 2007).

**IV.   DISCUSSION**

**a. Count I**

Defendant Litton moves to dismiss Plaintiff's FDCPA claim on two grounds: that the Count

5

fails to comply with the basic pleading requirements of Rule 8 by providing no factual allegations beyond a recitation of the elements of the claim, and that Plaintiff did not, in fact, receive any communication that could, as a matter of law, be viewed as a violation of the FDCPA. Defendant's challenge to the claim presents a close case. While Plaintiff's pleading as to Count I merely utters the generic elements of one or more FDCPA violations, the Court finds that, read in conjunction with Plaintiff's factual allegations directly relating to her interaction with the Defendant, the Count cannot be dismissed at this juncture. Section 1692(e) of the Act provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and names "the following conduct [as] a violation of this section: . . . (2) The false representation of– (A) the character, amount, or legal status of any debt." Accepting as true Plaintiff's factual allegations and drawing all reasonable inferences in her favor, at least this portion of the FDCPA is grounds for Count I to survive a challenge based on deficient pleadings.

Nor can the Court conclude that Plaintiff did not receive any communication that could be found to violate the FDCPA. Plaintiff's claim alleges that Defendant's actions ran afoul of §§ 1692(d), 1692(e) and 1692(f), each of which necessarily require Defendant to have employed representation or means "in connection with the collection of a debt." Defendant argues that the letter from Litton, which Plaintiff asserts constitutes such a means, see Compl. Ex. A, was simply a response to Plaintiff's inquiry and did not demand payment. See Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384 (7th Cir. 1998) ("Only communications 'in connection with the collection of any debt' fall under the ambit of the Act . . . [but the] important letter dated January 4 does not 'demand' any payment whatsoever, but merely informs the Baileys about 'the current status' of their account. The due dates listed in the letter are all prospective. Surely this is not the type of dunning

6

letter that describes a communication related to 'the collection' of a debt."). Nonetheless, the letter exhibited by Plaintiff, while generally containing informational text and lacking explicit language seeking payment, prominently displays the following: "LITTON LOAN SERVICING IS A DEBT COLLECTOR.  THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." Compl. Ex. 3 (capitalization in original).  Given this language in the letter, the Court finds that Plaintiff, whether or not she is "likely to prevail ultimately, . . . she is entitled to offer evidence to support the claim[]" of FDCPA violations.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).  Accordingly, Litton's Motion is denied as to Count I.[1]

**b. Count V**

Defendant Litton challenges Plaintiff's claim for intentional misrepresentation on grounds that it has not been pled with the particularity required by Federal Rule of Civil Procedure 9(b).  See FED. R. CIV. P. 9(b) (stating that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  "To state a claim for fraudulent misrepresentation under New York law a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such

---

[1] Both parties' briefing on the application of Goldman v. Cohen, 445 F.3d 152 (2d Cir. 2006) to Plaintiff's claim is misplaced; while Goldman held that the institution of a lawsuit constitutes an initial communication, the 2006 Amendments to the FDCPA superceded that ruling.  Thus, 15 U.S.C. §1692g(d) provides that "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).  See also Ellis v. Solomon & Soloman, P.C., 591 F.3d 130 (2d Cir. 2010) (recognizing that Goldman is superceded by statutory amendments).

reliance." Eternity Global Fund Master Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 1996) (internal quotations and citations omitted). In Eternity, the Second Circuit explained that although Rule 9(b) allows a defendant's mental state or intent to be averred generally, this leeway is not a license to base claims of fraud on speculation and conclusory allegations. Id. (internal quotation and citation omitted). Thus, a plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent," which may be done "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (internal quotations and citation omitted).

The Court finds that Defendant's Motion must be granted with regard to Count V, as Plaintiff's pleadings merely recite the elements of a fraudulent representation claim and lack the basis of sufficient factual allegations. Indeed, the entirety of Plaintiff's claim rests on the assertion that Defendants represented that they were "entitled to collect late fees and charges that were not legally due and owing." Compl. ¶ 71. Assuming that to be the case, however, there are simply no allegations that attest to an intent to defraud the Plaintiff. The Complaint simply states that the representation was "willful and intentional" while Plaintiff's opposing brief appears to assert that intent is established by the motive "[t]o demand an excessive amount, then sue the consumer in foreclosure to arm twist payment." Compl. ¶ 76; Pl.'s Response at 23. In other words, Plaintiff's claim consists of the allegation that she was overcharged and the conclusory statement that these charges were fraudulent; intent to defraud is apparently alleged on the basis of a vague profit-seeking motive which is in no way depends on the facts of her case or on any particular facts at all. Therefore, it is clear that Plaintiff has neither alleged facts showing that Defendants had both motive

and opportunity to commit fraud nor alleged facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Accordingly, Claim V is fatally deficient and, therefore, dismissed.

**c. Counts VI and VII**

In Counts VI and VII, Plaintiff asserts claims of negligence and gross negligence, respectively, against the Defendants; in her Complaint, these claims are posed against both Litton and HSBC, but Plaintiff withdraws the negligence claim against Litton in her Response, while leaving in place Count VII's gross negligence claim. See Pl.'s Resp. at 2.

To state a prima facie claim for negligence, the plaintiff must demonstrate that the defendant "owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 667 (S.D.N.Y. 2000) (quoting King v. Crossland Savings Bank, 111 F.3d 251, 259 (2d Cir. 1997)). "A tort action may accompany one for breach of contract only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is breached." Bouquet Brands Div. of J & D Food Sales v. Citibank, N.A., 97 A.D.2d 936 (3d Dept. 1983); see also Hargrave v. Oki Nursery Inc., 636 F.2d 897, 899 (2d Cir. 1997) (it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort). Plaintiff states her negligence claim in Count VI in the following terms: that "Defendants owed Plaintiff a duty. . . with respect to the assessment of proper fees;" that "Defendants breached the duty;" that the breach "directly or proximately damaged Plaintiff;" and that "said duty is independent of the contractual duties owed." Compl. ¶ 78-81

This generic pleading by Plaintiff is insufficient to make out a cognizable negligence claim. "Merely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382 (1987). While it has been found that banks owe a general duty of care to their customers to conduct business reasonably, see Crossland Savings Bank, 111 F.3d 259 n.3, Plaintiff's minimal and conclusory articulation of the elements of a negligence claim, without more, does not allege any facts beyond the charging of excess fees. New York law does not recognize any cause of action for negligent breach of contract. Megaris Furs Inc. v. Gimbel Bros., Inc., 172 A.D.2d 209, 211 (1st Dept. 1991). Plaintiff never states what the duty of care was owed by each Defendant, how the Defendants breached that duty and what damages Plaintiff suffered due to that breach. Plaintiff's pleading truly does no more than append the language of tort to the sole factual allegation of alleged overcharges; there are no allegations of what negligence might actually have been committed. Accordingly, Count VI is dismissed.

Count VII, Plaintiff's claim for gross negligence, fails for substantially the same deficiencies. As differentiated from "normal" negligence, a claim of gross negligence alleges "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." American Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996) (quoting Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., 81 N.Y.2d 821, 823-24 (1993)). Thus, in addition to the necessary elements of a valid negligence claim, Plaintiff must allege facts attesting to the "aggravated character" of Defendants' conduct. See Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). "The difference between negligence and gross negligence is one of fact, not law." Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000). Count VII,

while suffering from all the defects that render Plaintiff's negligence pleading inadequate, lacks the further factual allegations necessary to state a claim for gross negligence; Plaintiff does nothing more than add to her generic negligence elements the additional conclusory statement that Defendants acted "willfully, maliciously, intentionally and in reckless disregard." Compl. ¶ 83-88.  Therefore, Count VII is dismissed.

### d. Count VIII

In Count VIII, Plaintiff alleges a claim for a breach of the implied covenant of good faith and fair dealing between herself and Defendants.  She asserts that "[i]nherent in [her] contract was the Covenant for Good Faith and Fair Dealing[, which] Defendants breached. . . by failing to live up to their end of the contract and charging excessive late fees." Compl. ¶ 93-94.  Other than describing the allegedly improper fees and charges which comprise the alleged breach of contract, Count VIII contains no other factual allegations of wrongdoing by Defendants.  The entirety of Plaintiff's claim, then, is that Defendants' alleged breach of contract also constituted breach of Defendants' implied duty to act good faith and fair dealing.  As such, Defendants move to dismiss the Count for being duplicative of Plaintiff's underlying breach of contract claim.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992) (quoting Geler v. National Westminster Bank USA, 770 F. Supp. 210, 215 (S.D.N.Y. 1991)).  While it is undisputed that "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance," the covenant means that "neither party shall do anything which will have the effect of

destroying or injuring the right of the other party to receive the fruits of the contract" as long as no implied obligation "would be inconsistent with other terms of the contractual relationship." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 291-92 (1995) (quotations and citations omitted). Critically, however, "[a] cause of action for breach of the implied duty of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" Hawthorne Group, LLC v. RRE Ventures, 7 A.D.3d 320 (1st Dept. 2004) (quotation and citation omitted). In other words, a valid claim for breach of good faith and fair dealing cannot simply restate a breach of contract claim, naming as elements the same act of alleged contractual breach by Defendants and same damages arising from that breach. Rather, "[t]he implied obligation is in aid and furtherance of other terms of the agreement of the parties." Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 (1983).

Plaintiff makes no allegations that could give rise to a claim for breach of the implied covenant of good faith and fair dealing inherent in Plaintiff's contractual relationship with Defendants; Count VIII only repeats the allegations that comprise Plaintiff's breach of contract claim, and those allegations consist of Defendants' non-compliance with a term of their contract. As such, the Court grants Defendants' Motion; Count VIII is dismissed.

**e. Count IX**

Plaintiff alleges that Defendants committed a violation of New York General Business Law § 349 for deceptive business practices aimed at the public. In order to state a prima facie claim under this section, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a

12

result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland, 85 N.Y.2d 20, 25 (1995)).  In Oswego, the New York Court of Appeals held that "the acts or practices [must] have a broader impact on consumers at large," and that "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute."  Oswego, 85 N.Y.2d at 25.  Defendants move to dismiss Plaintiff's § 349 claim on grounds that it fails to allege conduct directed at consumers or having "a broad[] impact on consumers at large."  Id.

       Plaintiff's claim is indeed deficient.  The only factual allegations contained in her Complaint pertain to a dispute over late fees between the parties with respect to Plaintiff's mortgage; put differently, Plaintiff only describes a private contractual dispute, and her Complaint lacks any assertions of facts as to deceptive business practices aimed at the public.  There is no basis in her pleadings that might plausibly indicate that the alleged wrongful conduct by Defendants against her applies to consumers generally.  Such inadequacy is fatal.  Section 349 does not provide an opportunity for Plaintiff to style her personal dispute with Defendants as a broad practice without the benefit of factual allegations that would show conduct under the ambit of the Law.  Therefore, Count IX is dismissed.

**f.  Count X**

       Plaintiff asserts a claim of negligent hiring solely against HSBC for selecting Litton as servicer of her mortgage loan.  Count X alleges, in relevant part: that "HSBC turned a blind eye on the abuse and representations . . . yet at all times maintained control over the accounts;" that "Defendant knew or should have known Litton was overcharging Plaintiff . . . Litton was improperly

servicing the mortgage . . . [and] the account was not reported properly on Plaintiff's credit report;" that Defendant owed a duty to the plaintiff in the selection and hiring of a servicer;" that "Defendant breached the duty;" that "Defendant is liable for the acts of its agents;" and Defendant at all times herein kept care, custody and control over the account;" and that the Defendant's actions "were negligent and in reckless disregard for the truth." Compl. ¶ 100-110. Given this pleading, HSBC moves to dismiss the claim for having "no basis in law." HSBC Mot. at 6.

As stated above, in order to make out a claim for negligence, "a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." Crossland Savings Bank, 111 F.3d at 259. In a claim for negligent hiring, the "negligence of the employer in such a case is direct, not vicarious, and arises from its having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." Sheila C. v. Povich, 11 A.D.3d 120 (1st Dept. 2004). Thus, "an essential element of a cause of action for negligent hiring and retention is that the employer knew, or should have known, of the employee's propensity for the sort of conduct which caused the injury." Id.

The nature of the relationship between the Defendant, HSBC, and the actor who is alleged to have directly inflicted foreseeable harm, Litton, is a threshold issue for Plaintiff's negligent hiring claim. See Colo. Capital v. Owens, 227 F.R.D. 181, 188 (E.D.N.Y. 2005) ("This Court must first address the nature of the relationship between Providian and the debt collection agencies it hires. This is relevant to determine whether Providian can ever be held liable for the negligent acts of debt collection firms it hires."). Generally, for liability to be possible under a theory of negligent hiring,

Litton must be an employee of the Defendant or otherwise stand in an agency relationship, as opposed to "one merely of an employer-independent contractor." See Colo. Capital, 227 F.R.D. at 188. In order to establish an agency relationship for purposes of a negligent hiring claim, the "crucial factor . . . is whether [the defendant] exerts some control over the actions of the debt collection firms it hires." Id.

"As a general rule, a party is not liable for the negligence of an independent contractor." Becker v. Poling Transp. Corp., 356 F.3d 381 (2d Cir. 2004) (citing Rosenburg v. Equitable Life Assur. Soc'y of the United States, 79 N.Y.2d 663 (N.Y. 1992)). A negligent hiring claim, however, may be possible under an exception to the principle barring liability with respect to independent contractors where the defendant party itself was negligent "in selecting, instructing, or supervising the contractor." Becker, 356 F.3d at 389. As with negligent hiring in an employer-employee or agency relationship, the claim with respect to independent contractors is a form "of direct liability because it 'concerns the employer's liability for its own acts or omissions rather than its vicarious liability for the acts and omissions of the contractor.'" Kleeman v. Rheingold, 614 N.E.2d 712, 714 (N.Y. 1993).

Plaintiff's Count X may be read to allege negligent hiring on an agency theory or an independent contractor theory of the relationship between Litton and HSBC; certainly, and for good reason, there are no allegations that Litton is an actual employee of HSBC. The agency theory, however, must be rejected, because the extent of Plaintiff's claim on this basis is the plain allegation that HSBC had such a relationship, which she primarily asserts in response to Defendant's Motion to dismiss. Indeed, Plaintiff expressly concedes that: "At this stage of the litigation, Plaintiff has absolutely no idea what control HSBC exerted over LITTON and is seeking time to conduct

15

discovery." Response at 11. Thus, the question remains whether Plaintiff sufficiently alleges a claim against HSBC for negligently hiring Litton as an independent contractor. To do so, Plaintiff must "satisfy the elements of negligence" of duty, breach, causation and damages as to "the selection, instruction, or supervision" of Litton. Colo. Capital, 227 F.R.D. at 188.

Ultimately, Plaintiff's pleading is deficient, and Count X must be dismissed. As discussed above with respect to Plaintiff's negligence and gross negligence claims, it is true that banks have been found to have a general duty of care owed to their customers to conduct business reasonably. See Crossland Savings Bank, 111 F.3d at 259 n.3. Plaintiff gives no indication of what duty HSBC owed to her, but assuming that duty has been adequately alleged to survive Defendant's Motion to dismiss, the Complaint contains no allegations of how HSBC actually breached this duty. Rather, Plaintiff's pleading rests on the pure conclusion that Defendant breached a duty or that Defendant was negligent; the incorporated supporting factual allegations, even construed in the most favorable possible light for Plaintiff, simply do not convey any actions on the part of HSBC that resemble negligent conduct; indeed, conduct by HSBC is essentially absent from Plaintiff's entire Complaint. Accordingly, because the bare recitation of the elements of a negligence claim cannot survive Defendant's Motion, Count X is dismissed.

**g. HSBC and Counts II-IV**

Defendant HSBC has moved to dismiss the Complaint in its entirety as against HSBC. The Court has already concluded, based on Defendant Litton's arguments, that Counts V-X are dismissed, and Count I survives but only as to Litton. Thus, the remaining Counts II-IV are subject to HSBC's Motion based on deficient pleading. The Court, upon reviewing these remaining Counts,

finds that they do not contain any factual allegations as to HSBC that could support the claims they seek to make. Notably, in response to HSBC's Motion to dismiss, Plaintiff states that: "Defendants have raised the issue of Plaintiff's lack of adequate pleading of specific allegations relative to HSBC BANK US A. . . To be frank, Plaintiff has no idea who they are and never heard of them until they sued her in foreclosure."

Count II asserts that Litton committed a violation of the Real Estate Procedures Act, 12 U.S.C. § 2601; no reference to conduct by HSBC is made, other than Plaintiff's conclusory statement that "[e]ach Defendant is liable for the acts of the other." Compl. ¶ 56-7. Accordingly, because Plaintiff's claim is devoid of facts implicating HSBC and no grounds for vicarious liability are given, Count II is dismissed as to HSBC. Similarly, in Count III, Plaintiff asserts a violation of the Truth in Lending Act, 15 U.S.C. § 1601, but does not include any factual allegations as to the involvement of HSBC. Rather, the Complaint uses the undifferentiated term "Defendants" in reference to conduct allegedly undertaken by Litton. Compl. ¶ 59-63. Therefore, Count III is dismissed as against HSBC. As in Count III, Count IV contains no factual allegations as to HSBC but uses the general term "Defendants" in broadly asserting a breach of contract claim; thus, there is no articulation of what acts HSBC may have done that could constitute breach of "its contracts." Compl. ¶ 68. The Court finds that "[t]he complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted." Appalachian Enters. v. ePayment Solutions Ltd., No. 01-cv-11502, 2004 U.S. Dist. LEXIS 24657 at *26 (S.D.N.Y. Dec. 8, 2004). Count IV is dismissed as to HSBC.

**h. Class Action Certification**

Plaintiff's Complaint makes two very different categories of allegations. It contains certain factual allegations and a set of claims based on Plaintiff's actual involvement with Defendants. In the foregoing subsections, the Court has found that a number of these claims must be dismissed based on the pleadings presented by Plaintiff. Beyond this, Plaintiff asserts "class allegations" suggesting an extensive "scheme of illegal, unfair, unlawful, and deceptive business practices." However, none of the claims currently under review by the Court appear to derive from such class allegations, at least for purposes of ruling of Defendants' Motions. Further, Plaintiff's Complaint alleges absolutely no facts to support the contention that Defendants engaged in some sort of illegal, national scheme. At present, this absence has limited importance for the Court's instant ruling; at present, as it matters only for purposes of evaluating whether Plaintiff has met the prerequisites of Federal Rule of Civil Procedure 23(a) in order to be considered for class certification.

The Court finds that it cannot certify Plaintiff's suit as a class action. Under Rule 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Because these prerequisites are not fulfilled, the Court need not analyze whether certification should be granted under Rule 23(b).

The class action aspect of Plaintiff's suit appears to be premised on the contention that her dispute with Litton and HSBC is only a single episode in a "nationwide scheme" to obtain various improper 'late fees and charges." Compl. ¶ 3. The RESPA, TILA and FDCPA Counts of her action, *inter alia*, are thus indicated to be potential class claims, and Plaintiff additionally alleges that "[s]aid

18

practices also violate the contract law and common law in each state Defendants do business."

Compl. ¶ 6-9. Plaintiff seeks to bring the action individually and:

> "on behalf of all others situated, whose loans were services by Litton Mortgage and or held by HSBC within one year of the date of filing, and a) whose loans were (I) in default or treated as being in default by Litton and (ii) who incurred or were assessed late fees and or default-related fees and (iii) *said late fees were incurred or assessed in violation of law or contract*; or b) who otherwise were affected, or whose loans were otherwise affected, by one of the additional practices that are the subject of this complaint."

Compl. ¶ 16 (emphasis added). Plaintiff "estimate[s] there are in excess of 10,000 putative class members," id. ¶ 19, and lists and series of purported typical common questions of law and fact. Each of these common questions exactly parallels the allegations she has made as to Litton in her personal dispute over late fees imposed for non-payment of her mortgage during October through December of 2008.

Plaintiff's pleadings preclude certification of her proposed class. Rather than show a coherent class with common questions and common claims, Plaintiff only alleges facts showing a dispute between her and Litton concerning a particular course of conduct in relation to her own mortgage contract; beyond the bare assertion that thousands were similarly harmed, Plaintiff does not allege a single fact showing this to be the case. Indeed, Plaintiff's Complaint effective attaches the generic language of a class action suit to the factual basis of her own claim, where her own claim fairly indicates only an individual dispute that depended upon contractual terms and action specific to the instant action. Accordingly, the Court cannot certify Plaintiff's class action.

Plaintiff's statement of the proposed class contains another fundamental defect. By suggesting that it is comprised of those persons who have been subjected by Litton to "late fees [that] were incurred or assessed in violation of law or contract," the class is defined in a circular and

conclusory manner. Such a proposed class is an impossibility, as it places the disputed core of her own lawsuit – the very question of whether Plaintiff can prevail in her individual dispute – as the defining condition of the proposed class and *assumes* the fact of unlawfulness. Yet the lawfulness of those fees has never been established in Plaintiff's case, much less in the cases of thousands of others.

## V.  CONCLUSION

Therefore, based on the foregoing, it is hereby

**ORDERED**, that Defendant Litton's Motion to Dismiss (Dkt. No. 22) is **GRANTED** in part and **DENIED** in part, consistent with this Decision and Order; and it is further

**ORDERED**, that Defendant HSBC's Motion to Dismiss (Dkt. No. 21) is **GRANTED** in its entirety, and it is further

**ORDERED**, that Counts V-X of Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED**; and it is further

**ORDERED**, that Defendant HSBC is **DISMISSED** as a party to this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

 **IT IS SO ORDERED.**

DATED:     March 23, 2010
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge