**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CINDY CORAZZINI, Individually and on**
**behalf of all others similarly situated,**

                                        **Plaintiff,**

        **vs.**                                          **1:09-cv-199**
                                                         **(MAD/ATB)**

**LITTON LOAN SERVICING LLP and HSBC**
**BANK USA, NATIONAL ASSOCIATION, As**
**Trustee under the Pooling and Servicing**
**Agreement dated August 1, 2006, Ace Securities**
**Corp. Home Equity Loan Trust Series 2006-FM1,**
**Asset Backed Pass-Through Certificates,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**OFFICE OF RICHARD L. DIMAGGIO**        **RICHARD L. DIMAGGIO, JR., ESQ.**
6 Berkley Road
Glenville, New York 12302
Attorneys for plaintiff

**K & L GATES LLP**                      **BRIAN M. FORBES, ESQ.**
State Street Financial Center            **R. BRUCE ALLENSWORTH, ESQ.**
One Lincoln Street                       **GREGORY N. BLASE, ESQ.**
Boston, Massachusetts 02111
Attorneys for defendants

**K & L GATES LLP**                      **DAVID S. VERSFELT, ESQ.**
599 Lexington Avenue
New York, New York 10022-6030
Attorneys for defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On February 18, 2009, plaintiff commenced this action alleging that defendant Litton Loan

Servicing, LP ("defendant") and defendant HSBC Bank USA violated (1) the Fair Debt Collection

Practices Act ("FDCPA"), (2) the Real Estate Settlement Procedures Act ("RESPA"), (3) the

Truth in Lending Act ("TILA"), and (4) New York State General Business Law § 349.  The

complaint also alleged intentional misrepresentation, negligence, gross negligence, breach of the

implied covenant for good faith and fair dealing, and negligent hiring.  In a Memorandum-

Decision and Order dated March 23, 2010, the Court dismissed all claims against defendant

HSBC and further dismissed counts five through ten.  *See* Dkt. No. 34 at 7-16.  Additionally, the

Court, *sua sponte*, dismissed plaintiff's class claims, concluding that the allegations could not

proceed as a class action.  *See id.* at 17-20.

On February 3, 2011, plaintiff sought leave to amend the complaint to add an additional

count regarding a different alleged violation of the FDCPA.  *See* Dkt. No. 52.  In a February 14,

2011 text order, the Court denied that request.

Currently before the Court is defendant's motion for summary judgment on the remaining

claims.[1]

---

[1] As a result of the Court's March 23, 2010 Memorandum-Decision and Order, the
following counts remain: (1) Count I alleging an FDCPA cause of action; (2) Count II alleging a
RESPA cause of action; (3) Count III alleging a TILA cause of action; and (4) Count IV alleging a
breach of contract cause of action.

## II. BACKGROUND[2]

Defendant is primarily a residential mortgage loan servicer, with offices in Houston, Texas. *See* Dkt. No. 56-2 at ¶ 1. Defendant services residential mortgage loans secured by property located in all fifty states, including New York. *See id.* at ¶ 2.

### A.   Plaintiff's loan from Fremont Investment & Loan

On or about April 21, 2006, plaintiff obtained a mortgage refinance loan from Fremont Investment & Loan ("Fremont") on the property located at 21 Spice Hill Boulevard, Halfmoon, New York (the "Property"). The loan is evidenced by an Adjustable Rate Note (the "Note"), which is for the principal amount of $536,000, and was to be repaid over a term of thirty (30) years at an introductory interest rate of 8.9%. *See id.* at ¶ 4. The Note states that plaintiff's initial monthly payment of principal and interest was $4,274.27. *See id.* at ¶ 5. The Note is secured by a mortgage on the Property, which plaintiff executed on or about April 21, 2006, in Fremont's favor. *See id.* at ¶ 6.

### B.   Defendant's servicing of plaintiff's loan

Effective June 1, 2008, Fremont transferred the servicing rights to plaintiff's loan to defendant. *See id.* at ¶ 7. Both Fremont and defendant furnished plaintiff with notices of the transfer of servicing. *See id.* at ¶ 8. In particular, defendant sent plaintiff a notice of transfer of

---

[2] Plaintiff's "Statement of Material Facts" fails to comply with the requirements set forth in Local Rule 7.1 and further fails to contradict most of the facts alleged in defendant's Rule 7.1 statement. In fact, in her "Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment," plaintiff asserts that she "accepts most of Defendants [sic] Statements of Material Fact," but does note that she takes exception to certain facts alleged. *See* Dkt. No. 59 at 5.

servicing dated June 8, 2008.  *See id.* at ¶¶ 9-10.  Among other things, defendant's June 8, 2008 notice of transfer of servicing sets forth (a) the June 1, 2008 effective date of the transfer of servicing from Fremont to defendant; (b) defendant's address and toll-free number; (c) a toll-free number at Fremont for plaintiff to call with "any questions relating to the transfer of servicing;" (d) a notice to contact defendant's Customer Care Department at the toll-free number with "questions regarding the servicing of your loan;" (e) a notice that Fremont would no longer accept payments from plaintiff as of June 1, 2008; (f) a notice that "premiums for mortgage, life, accidental death, or disability insurance will not be transferred from [Fremont]," and that plaintiff "may contact [her] carrier for arrangements to maintain . . . coverage;" and (g) a statement that the transfer of servicing to defendant "does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of [plaintiff's] loan."  *See id.* at ¶ 10.

**C.    Interest rate adjustments under the terms of plaintiff's note**

The Note provides that the interest rate on plaintiff's loan would change on May 1, 2008 and at six-month intervals thereafter (the "change date").  *See id.* at ¶¶ 11-12.  On or about September 24, 2008 (prior to the first change date after defendant acquired servicing rights to plaintiff's loan), defendant mailed a notice informing plaintiff that the interest rate applicable to her loan would adjust on November 1, 2008.  *See id.* at ¶ 13.  Defendant's September 24, 2008 letter to plaintiff states, among other things, that, (a) prior to November 1, 2008, the interest rate applicable to plaintiff's loan was 9.5%, which was based on an Index Value of 2.67100%; (b) after November 1, 2008, the interest rate applicable to plaintiff's loan would adjust to 9.875%, which was based on an Index Value of 3.01625%; (c) effective November 1, 2008, plaintiff's monthly payment of principal would adjust from $4,499.46 to $4,640.95; and, (d) as of November 1, 2008,

the projected unpaid balance on plaintiff's loan would be approximately $526,232.55. *See id.* at ¶ 14. On March 20, 2009 and September 24, 2009, defendant sent plaintiff notice of further interest rate changes. *See id.* at ¶ 15.

**D.    Late fees assessed to plaintiff's loan**

Under the terms of the Note, plaintiff is required to make payments of principal and interest by the first day of each month. *See id.* at ¶ 17. The Note further provides that plaintiff may be charged up to five percent of any overdue payment of principal and interest that is not received "by the end of 15 calendar days after the date it is due." *See id.* at ¶ 18.

According to defendant's records, as of June 1, 2008, the date on which servicing of plaintiff's loan transferred from Fremont to defendant, plaintiff's account had five outstanding late fees. *See id.* at ¶ 19. According to defendant's records, Fremont waived two of the late fees prior to the date on which servicing of plaintiff's loan was transferred to defendant. *See id.* at ¶ 21. The total balance of late fees on plaintiff's loan at the time of transfer was approximately $640.40. *See id.* at ¶ 22.

After the transfer of servicing to defendant in June of 2008, defendant assessed plaintiff late fees in the amount of $89.99 (two percent of the unpaid, adjusted principal and interest payment due in each respective month) when plaintiff failed to make the outstanding principal and interest payment for a given month by the expiration of fifteen calendar days after the due date. *See id.* at ¶ 24. Specifically, defendant assessed late fees to plaintiff's account as follows:

| Contractual Due Date | Date of Late Fee | Amount | Date Payment Received |
|---|---|---|---|
| July 1, 2008 | July 16, 2008 | $89.99 | Sept. 5, 2008 |
| Aug. 1, 2008 | Aug. 16, 2008 | $89.99 | Sept. 15, 2008 |
| Sept. 1, 2008 | Sept. 16, 2008 | $89.99 | Oct. 17, 2008 |
| Oct. 1, 2008 | Oct. 16, 2008 | $89.99 | No payment received |
| Nov. 1, 2008 | Nov. 16, 2008 | $89.99 | No payment received |

Total: $449.95

*See id.* As such, as of December 1, 2008, the total outstanding balance for late fees assessed to plaintiff's account was $1,090.35, not including the two late fees waived by Fremont before servicing of plaintiff's loan transferred to defendant. *See id.* at ¶ 26.

**E.      The November 14, 2008 letter and defendant's response**

On or about November 25, 2008, defendant received a letter from plaintiff dated November 14, 2008. *See id.* at ¶ 27; *see also* Dkt. No. 57-9. The letter sets forth twenty-seven separate requests relating to a range of topics, including the origination and securitization of plaintiff's loan. *See id.* at ¶ 28; Dkt. No. 57-9. The letter also demands, among other things, that defendant provide an "affidavit" that it is "a nationally chartered commercial bank or lending institution." *See id.* at ¶ 29; Dkt. No. 57-9.

On November 26, 2008, defendant sent plaintiff a letter confirming receipt of her November 2008 letter. *See* Dkt. No. 56-2 at ¶ 32. In further response to the November 2008 letter, defendant mailed two pieces of correspondence dated December 9, 2008. *See id.* at ¶¶ 33-37. The first correspondence states that, as of December 9, 2008, plaintiff's loan was due for the October 1, 2008 payment, and, therefore, was three months in arrears. *See id.* at ¶ 34; *see also* Dkt. No. 1 at Exhibit "A." The letter also states that the outstanding late-fee balance as of that date was $1,090.35. *See id.* at ¶ 35. Finally, the letter indicated that "[a] complete Loan History

6

will be forwarded under separate cover for your review." *See id.* at ¶ 36.  The second

correspondence from defendant to plaintiff included the copy of plaintiff's loan payment history

referenced in the first letter.  *See id.* at ¶ 37.

In the sixty days after its receipt of the November 2008 letter, defendant did not submit

credit reporting information regarding plaintiff's loan to any consumer reporting agencies.  *See

id.* at ¶ 38.[3]  In fact, defendant has not reported plaintiff's loan to consumer reporting agencies at

any time since it acquired servicing rights in 2008.  *See id.* at ¶ 39.

**F.      Other fees for property valuation and other expenses**

Under the terms of the mortgage, plaintiff is responsible for preserving and maintaining

the property to prevent the property from deteriorating or decreasing in value.  *See id.* at ¶ 41.  The

mortgage provides for the recovery from plaintiff for corporate and escrow advances made for the

purpose of payment of real estate taxes, lender-placed insurance premiums, property preservation

and valuation costs, and costs associated with curing default, including foreclosure related costs.

*See id.* at ¶ 42.  Section 14 of plaintiff's mortgage provides, in relevant part, that "[defendant] may

charge me fees for services performed in connection with my default, for the purpose of protecting

[defendant's] interest in the Property and rights under this Security Instrument including, but not

limited to . . . property inspection and valuation fees." *See id.* at ¶ 43.

As of December 9, 2008, plaintiff owed $128.19 for fees that defendant had advanced for

property inspection and valuation services in accordance with the terms of the mortgage.  *See*

---

[3] In her memorandum of law in response to defendant's motion for summary judgment, plaintiff appears to assert that defendant improperly submitted information relating to the overdue amounts to a consumer reporting agency, but fails to provide anything beyond a conclusory allegation that this practice is prohibited.  *See* Dkt. No. 59 at 10.

*id.* at ¶ 44.  Specifically, prior to that date, defendant had paid for one broker price option ("BPO")[4] and three property inspections with respect to the Property.  *See id.* at ¶ 45.  One of the property inspections was requested by Fremont during the time that it serviced plaintiff's loan.  *See id.* at ¶ 55.  As to the BPO and the property inspections requested by defendant, those services were provided by third-party vendors with whom defendant has no affiliation.  *See id.* at ¶ 56.

## G.      Current status of plaintiff's loan

Defendant contends that, as of April 29, 2011, plaintiff is due and owing for her October 2008 monthly payment and that her last payment to defendant was received on or about October 17, 2008.  *See id.* at ¶¶ 64-65.  Moreover, defendant claims that the outstanding principal amount on plaintiff's loan, as of April 29, 2011, is approximately $526,891.61.  *See id.* at ¶ 66.  Further, defendant alleges that it has advanced approximately $69,279.86 for unpaid property taxes on plaintiff's loan, for which plaintiff is responsible.  *See id.* at ¶¶ 68-69.

Plaintiff contends that defendant incorrectly states that she "'has not paid any of the Freemont late fees or the late fees that [defendant] assessed in 2008 or any later assessed late fees for untimely payments.'"  *See* Dkt. No. 59 at 6 (quotation omitted).  Plaintiff claims that defendant's own records establish she paid the late fees, but a later letter acknowledges that defendant "'reversed' the payment and put Plaintiff's late fee payment in a suspense account."  *See id.* (citing Exhibit "J").  Moreover, plaintiff asserts that defendant incorrectly states that she has

_____

[4] A "broker price option" or "BPO" is a third-party comparative marketing analysis used to ascertain current property value.  *See id.* at ¶ 46.  The BPO is conducted to protect the interests of the lender/investor's interest in the property as provided for in the mortgage.  *See id.* at ¶ 47.  Moreover, it also allows defendant to assist the borrower with loss mitigation options.  *See id.* at ¶ 48.  Defendant advances the full payment for the BPO to the vendor from its own funds and then seeks to obtain reimbursement from the borrower.  *See id.* at ¶¶ 49-50

failed to make any payments since 2008.  *See id.* (citing Exhibit "I").  In fact, plaintiff claims that she made a payment in 2009, but that defendant refused to accept the payment and returned the check to her.  *See id.*  Finally, plaintiff alleges that defendant demanded different amounts due in three letters which was "misleading to the 'least sophisticated consumer.'" *See id.* at 7.  Specifically, plaintiff alleges that the payment due on November 1, 2008 had a balance of $14,498.74, but on November 17, 2008, defendant demanded $10,089.27 and then $14,640.23 on December 1, 2008.  *See id.* (citing Exhibits "F-G").

### III. DISCUSSION

**A.      Summary judgment standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of

material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### B.      Plaintiff's FDCPA claims

In Count I of the complaint, plaintiff alleges that defendant violated the FDCPA by (1) attempting to collect amounts not permitted by law pursuant to 15 U.S.C. § 1692f(1); (2) engaging in unfair and unconscionable collections methods pursuant to 15 U.S.C. § 1692f(1); (3) giving a false impression of the character and amount of the debt pursuant to 15 U.S.C. § 1692e(2); (4) using false and deceptive means to collect a debt in violation of 15 U.S.C. § 1692e; (5) "engaging in conduct the natural consequence of which is to harass, oppress or abuse [debtors]," in violation of 15 U.S.C. § 1692d; and (6) failing to provide disclosures required by 15 U.S.C. § 1692e(11). *See* Dkt. No. 1 at ¶ 54.  Plaintiff's allegations center around the fact that she believes that defendant misstated the amount due on several occasions and that defendant improperly placed her payment of late fees into a "suspense account."  *See* Dkt. No. 59 at 13-14.  Defendant asserts that the undisputed evidence establishes that plaintiff was properly assessed late fees and corporate advances, that plaintiff is mistaken that the billing statements were confusing to the "least sophisticated consumer," and that the billing statements misstated the amount owed.  *See* Dkt. No. 56-1 at 15-16; Dkt. No. 60 at 3-4.[5]

---

[5] Plaintiff provides almost no guidance regarding this claim in her opposition to defendant's motion for summary judgment and further fails to dispute many of the assertions in

(continued...)

### 1. Plaintiff's claims under 15 U.S.C. §§ 1692e and 1692f

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)).  To that end, the FDCPA requires that a debt collector communicate specific information to a consumer in connection with the collection of any debt.  *See* 15 U .S.C. § 1692g.  In doing so, "[a] debt collector may not use any false, deceptive, or misleading representation or means."  15 U.S.C. § 1692e.  This specifically prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt[.]"  15 U.S.C. § 1692e(2)(A).  Further, "[ a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  This, in turn, specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

Whether a debt collector's communications to a consumer complies with the FDCPA's requirements is determined "from the perspective of the 'least sophisticated consumer.'"  *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005) (quotation omitted).  "It is an objective standard, designed to protect all consumers, 'the gullible as well as the shrewd.'"  *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotation omitted).  To prevail under this standard, "a consumer does not need to show intentional conduct on the part of the debt collector."  *Id.* (noting that the FDCPA "'is a strict liability statute'" (quotation and other citation

---

[5](...continued)
defendant's moving papers and statement of material facts.

omitted)).  Further, "it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).  It should be noted, however, that "'even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Ellis*, 591 F.3d at 135 (quotations omitted); *see also Jacobson*, 516 F.3d at 90 (holding that, "in applying this standard, we bear in mind the Act's 'dual purpose': in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications" (citation omitted)).

The sixteen subsections contained in section 1692e of the Act provide a non-exhaustive list of practices that fall within the FDCPA's ban.  *See* 15 U.S.C. § 1692e.  A debt collection practice may violate the FDCPA even if it does not fall within any of the enumerated circumstances set forth in section 1692e,  *see Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 62 (2d Cir. 1993) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)), and "[a] single violation of § 1692e is sufficient to establish civil liability under the FDCPA." *Clomon*, 988 F.2d at 1318 (citation omitted); *see also* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

In her complaint, plaintiff alleges that defendant's December 9, 2008 letter in response to plaintiff's qualified written request violated the FDCPA because it misstated the total amount due on her loan at that time, including the missed payments, late fees, and other fees.  *See* Dkt. No. 1 at ¶¶ 41-50.  First, plaintiff seems to base this claim on her subjective miscalculation of the fees owed, as stated in defendant's response, and not any unfair practice engaged in by defendant.  As

defendant made clear in its letter, "[a]s of December 9, 2008, the amount due on the loan is $14,858.41.  This amount includes the October 1, 2008 through December 1, 2008 installments of $13,639.87 late fees of $1,090.35 and other fees of $128.19."  *See* Dkt. No. 1-2.  The installment amount due included two missed installment payments at the $4,499.46 rate and one installment payment of $4,640.95,[6] totaling $13,639.87.  *See* Dkt. No. 56-2 at ¶ 14.  Further, the total amount due included $1,090.35, which consisted of (1) two late fees assessed by Fremont for $213.71; (2) one late fee assessed by Fremont in the lesser amount of $212.98; and (3) five late fees assessed by defendant at $89.99 per occurrence.  *See* Dkt. No. 56-2 at ¶¶ 20-25.  Finally, the December 9, 2008 response properly indicated that plaintiff owed $128.19 for "other charges," which consisted of three property inspection fees and one BPO.  *See* Dkt. No. 56-2 at 35 (citing Spradling Decl. (Dkt. No. 57) at ¶¶ 17-25; 30; 38-46 and Exhibits H and K thereto).

Contrary to plaintiff's conclusory allegations, entirely unsupported by any evidentiary support or analysis, the total amount set forth in the December 9, 2008 letter is not confusing and, in fact, correctly states the amounts due.[7]  Plaintiff's subjective misunderstanding of the total

---

[6] The monthly installment payment increased on November 1, 2008 because the interest rate applicable to plaintiff's loan increased from 9.5% to 9.875%.  *See* Dkt. No. 57 at ¶ 15.

[7] Plaintiff alleges in her response to defendant's motion for summary judgment, for the first time, that plaintiff sent three letters in a thirty-day period that "do not add up" and were, therefore, confusing to the "least sophisticated consumer."  *See* Dkt. No. 59 at 13-14.  Plaintiff claims that, in the November 1, 2008 statement, defendant states that "'The Total Amount Now Due is $14,408.75,'" but then claims in the November 17, 2008 Notice of Default that "the amount due for the default is $10,089.27 'to bring the loan current.'" *See* Dkt. No. 59 at 13.  Finally, plaintiff asserts that the December 1, 2008 bill "says that the payment is $14,640.23[, y]et Plaintiff's 12/1 monthly payment was for $4640.95."  *See id.*  Plaintiff claims that receiving these three different bills in one month period, all for different amounts, is misleading and violates 15 U.S.C. § 1692. *See id.*

First, as defendant correctly notes, plaintiff may not use her response to a motion for summary judgment to amend her complaint and add new claims.  *See Sheils v. Minogue*, No.

(continued...)

amount owed does not constitute a false, deceptive, or misleading representation that would

confuse the least sophisticated consumer.  Moreover, plaintiff has failed to allege any conduct in

violation of section 1692f because, contrary to her assertions, she has failed to establish that

defendant tried to collect an amount not provided for in the loan agreement or that was not

permitted by law.

As this Court recently noted,

> [m]ere speculation that a document confuses the unsophisticated
> debtor is not enough to survive a motion for summary judgment
> filed by a debt collector. *Beler v. Blatt, Hasenmiller, Leibsker and
> Moore, LLC*, 2006 WL 1423118, at *3 (C.D. Ill. 2006).  The debtor
> must establish evidence of confusion with more than his own
> self-serving assertions. *Id.* (the plaintiff admitted in open court that
> she owed money to the defendant and had no difficulty
> understanding her relationship with the entities; the defendant was
> entitled to summary judgment).  To succeed in an action based upon
> the FDCPA, "a showing of more than literal falsity is required."
> *Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 2009 WL
> 901011, at *6–7 (N.D. Ill. 2009) (an "affidavit's inaccurate
> recitation of the debts and interest owed will not in themselves carry

---

[7](...continued)

9:06-cv-482, 2011 WL 210580, *1 (N.D.N.Y. Jan. 21, 2011) (citation omitted).  Second, even if
the Court were to consider this claim, it would fail on the merits.  In the Supplemental Declaration
of Christopher Spradling in Support of Litton Loan Servicing LP's Motion for Summary
Judgment, defendant thoroughly explains and justifies the amounts set forth in each document.
*See* Dkt. No. 61 at ¶¶ 6-13.  Contrary to plaintiff's assertions, defendant's own numbers do add up
and the two statements and notice of default contain different numbers because of a payment not
yet received by defendant, late fees accrued by plaintiff, and an increase in the interest rate of
plaintiff's loan.  Plaintiff's unsupported, subjective belief, that defendant misstated the amount due
is insufficient to defeat defendant's motion for summary judgment.  *See Pujol v. Universal
Fidelity Corp.*, No. 03-cv-5524, 2004 WL 1278163, *3-*4 (E.D.N.Y. June 9, 2004) (granting the
defendant's motion for summary judgment on the plaintiff's FDCPA and holding that "[w]here a
defendant has properly asserted that its challenged representation was true, the plaintiff must
present evidence upon which a jury could conclude otherwise"); *see also Cook v. Chase
Manhattan Mortg. Corp.*, 256 Fed. Appx. 223, 227 (10th Cir. 2007).

Based on the foregoing, the Court finds that these communications were not "false,
deceptive, or misleading," and, therefore, did not violate 15 U.S.C. § 1692e.

> the day for [the plaintiff]"); *Gargiulo*, 651 F. Supp. 2d at 192 (it is
> not enough to allege that statements were false).

*Hasbrouck v. Arrow Fin. Servs.*, No. 1:09-cv-748, 2011 WL 1899250, *4 (N.D.N.Y. May 19, 2011).  Plaintiff has failed to establish confusion with anything other than her attorney's own self-serving affidavit, which is insufficient to defeat defendant's motion for summary judgment.  *See id.* (citation omitted).  Finally, even if defendant did provide a false statement in one or more of its communications with plaintiff, plaintiff has failed to establish that the alleged false statement was material to her decision to pay her debt or that it impaired her ability to challenge the debt.  *See id.* (citing *O'Rourke v. Palisades Acquisition XYI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011)) (other citations omitted).

Based on the foregoing, the Court finds that plaintiff has failed to establish the requisite elements for a claim under the FDCPA and, therefore, grants defendant's motion for summary judgment as to this claim.

### 2. Plaintiff's claims under 15 U.S.C. § 1692h

Plaintiff asserts, for the first time in response to defendant's motion for summary judgment, that defendant "reversed" payment of $700 in late fees in July of 2008 by placing those fees into a "suspense account," in violation of 15 U.S.C. § 1692h.  *See* Dkt. No. 59 at 14.  Defendant asserts that plaintiff's argument fails because section 1692h applies only in situations where the consumer owes multiple debts.  *See* Dkt. No. 60 at 4-5.

Section 1692h provides that,

> [i]f any consumer owes multiple debts and makes any single
> payment to any debt collector with respect to such debts, such debt
> collector may not apply such payment to any debt which is disputed

by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

15 U.S.C. § 1692h.

Even if this claim was properly before the Court, it still fails because, as defendant correctly notes, section 1692h "contemplates a circumstance under which a debt collector manages multiple debts for a debtor." *Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-0098, 2006 WL 3498292, *10 (S.D. Ohio 2006) (citing *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005)).  Since defendant only serviced one of plaintiff's debts, *i.e.*, her mortgage refinance loan, the Court finds that defendant is entitled to summary judgment on this claim.

**C.      Plaintiff's RESPA claims**

In Count II of the complaint, plaintiff alleges that defendant violated RESPA by (1) failing to meet the requirements of 12 U.S.C. § 2605 regarding transfer or servicing and responding to qualified written requests; (2) charging excessive and unearned fees in violation of 12 U.S.C. § 2605; (3) failing to respond to a Qualified Written Request properly; and (4) placing incorrect and derogatory information on plaintiff's credit report before the statutorily-mandated time frame had expired.  *See* Dkt. No. 1 at ¶ 56.  Defendant asserts that each of plaintiff's RESPA claims fail because (1) defendant properly notified plaintiff of the transfer of the servicing of her loan; (2) defendant properly responded to plaintiff's qualified written request; (3) nothing in RESPA governs the charging of fees; and (4) defendant did not submit negative credit information regarding plaintiff's loan.  *See* Dkt. No. 56-1 at 16-22.

### 1. Notification of the transfer of loan servicing

In her complaint, plaintiff alleges that defendant failed "to meet the requirements of 12 USC 2605 regarding transfer o[f] servicing[.]" *See* Dkt. No. 1 at ¶ 56(a).

The RESPA provides that the transferor of servicing rights "shall notify the borrower in writing of any . . . transfer of the servicing of the loan to any other person . . . not less than 15 days before the effective date of transfer of the servicing." 12 U.S.C. § 2605(b). Thereafter, the transferee of servicing rights of the loan "shall notify the borrower of any . . . transfer [of servicing rights] . . . not more than 15 days after the . . . transfer." *Id.* § 2605(c).

In the present matter, servicing of plaintiff's loan transferred from Fremont to defendant on June 1, 2008. *See* Dkt. No. 57-3. Thereafter, on June 8, 2008, defendant timely notified plaintiff by letter of the transfer. *See* Dkt. No. 57-4. Moreover, both Fremont's and defendant's letters listed the information required pursuant to 12 U.S.C. § 2605(b)(3).

Based on the foregoing, the Court grants defendant's motion for summary judgment as to plaintiff's RESPA claim relating to the notification of the transfer of the servicing of plaintiff's loan.[8]

### 2. Qualified written request

Section 2605(e) requires a covered lender in receipt of a "qualified written request" from its borrower for information on the servicing of its loan to send "a written response

---

[8] In the alternative, because plaintiff fails to respond to defendant's arguments regarding why this aspect of her RESPA claim should be dismissed, the Court finds that plaintiff has abandoned this claim. *See Ballard v. The Children's Aid Society*, ___ F. Supp. 2d ___, 2011 WL 1664980, *10 (S.D.N.Y. 2011) (finding claim abandoned where the plaintiff failed to respond to the defendants' motion for summary judgment as to a certain claim) (citation omitted); *see also Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193,208 (S.D.N.Y. 2009) (citing cases).

acknowledging receipt of the correspondence within 20 days . . . unless the action requested is

taken within such period." 12 U.S.C. § 2605(e)(1)(A).[9]  Additionally, within sixty days of

receiving the borrower's qualified written request, the covered lender must do one of three things:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
>
>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

In the present matter, on November 14, 2008, plaintiff sent defendant a qualified written

request. *See* Dkt. No. 57-9.  Defendant received plaintiff's request on November 25, 2008; and,

---

[9] A "qualified written request" is "a written correspondence . . . that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

on November 26, 2008, defendant sent a written response acknowledging receipt of plaintiff's

request.  *See* Dkt. No. 57-10; *see also* Dkt. No. 56-2 at ¶¶ 27, 32.  As such, defendant

acknowledged receipt of plaintiff's request within the required twenty days.  *See* 12 U.S.C. §

2605(e)(1)(A).  Moreover, as will be discussed below, on December 9, 2008, defendant provided

plaintiff with a written explanation regarding some of the information requested, an explanation

why certain information could not be accurately provided, and a number to contact if plaintiff has

any additional questions.  *See* Dkt. No. 57-11.  As such, defendant complied with the sixty-day

statutory requirement.  *See* 12 U.S.C. § 2605(e)(2).

In her qualified written request, plaintiff makes twenty-seven numbered requests.  *See* Dkt.

No. 57-9.  Specifically, plaintiff requests

> 1. An affidavit in support of all fees from date of origination.  2.
> Copies of the signed HUD disclosure.  There may have been
> Regulation Z violations.  3. Dates payments were made, from
> origination.  4. Dates payments were posted, from origination.  5.
> Charges to said debt, from origination.  6. Added interest to debt
> from payment date to the posted date, from origination.  7.
> Photocopies of front and back of said promissory note with an
> affidavit of originality and date viewed and signed by notary public,
> stating they held the original note.  8. A complete and detailed
> amortization schedule, from origination, all payments.  9. Is this
> mortgage a mortgage backed security?  10. Does the bank raise an
> asset to itself, in addition to the liability?  11. Was this disclosed in
> the contract?  12.  Was I compensated for the bank using my note,
> and my signature, to raise this asset to the bank?  13. Was this
> account containing the asset for the bank, opened before the bank
> received my note?  14. When I pay off the loan, who gets the asset
> the bank raised to itself, with my note?  15. Was there inducement?
> (Advertising, Solicitation) 16. What does the note represent?  17.
> What is the interest rate? (8%, 10%, 12%) 18. Is that interest rate
> compounded annually, monthly, weekly, or daily?  19. What is the
> actual rate of interest? (25-50%) 20. Does this violate the Usury
> Laws? (12% or higher annual interest rate) 21. Was this disclosed in
> the contract as required by the Federal Usury Disclosure Act?  22.
> Did the bank raise an asset to itself on my hand written name?
> (Without my knowledge and consent) 23. Did the bank use the note

> first (before) I received loan, to raise funds for the loan?  (Did they sell it, or use it for collateral for a loan from another institution) 24.  Does this make the note a negotiable instrument? (Tendering a future earnings instrument for consideration to a third party and endorsing, "without recourse.") 25. Did the bank properly apply the proceeds from my note to the purported debt?  26. Who else is deriving a benefit from my note, (and hand written name) without my knowledge or consent?  27.  Please have a bank representative sign enclosed affidavit confirming said note (page 4).

*See* Dkt. No. 57-9.

Defendant claims that plaintiff's requests seeking information regarding "'payments' applied to her loan at various times, 'fees' that were charged to the account, and her current interest rate," are the only requests in the letter that relate to servicing; and, therefore, they are the only requests that are covered by the RESPA.  *See* Dkt. No. 56-1 at 20.  Moreover, defendant asserts that its response was timely and adequate, and that, in any event, plaintiff failed to establish actual damages and is therefore precluded from recovering statutory damages.  *See id.* at 20-21.

Section 2605 of the RESPA requires a loan servicer to provide a written response to a borrower's qualified written request.  *See* 12 U.S.C. § 2605(e).  This section of the RESPA is intended to provide borrowers with greater access to account information.  *See* 12 U.S.C. § 2601(a).  The request must (1) be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer; (2) include, or otherwise enable the servicer to identify, the name and account of the borrower; and (3) include a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  *See* 12 U.S.C. § 2605(e)(1)(B).

The qualified written request must be related to "**the servicing of [the] loan**."  12 U.S.C. § 2605(e)(1)(A)-(B) (emphasis added).  The RESPA defines servicing as "receiving any scheduled

periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3). Finally, a plaintiff must allege actual damages resulting from a violation of § 2605.  *See* 12 U.S.C. § 2605(f)(1)(A) (providing that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: in the case of any action by an individual, an amount equal to the sum of . . . any actual damages to the borrower as a result of the failure"); *see also Collier v. Wells Fargo Home Mortg.*, No. 7:04–CV–086–K, 2006 WL 1464170, *3 (N.D. Tex. May 26, 2006) (holding that failure to establish actual damages resulting from the alleged RESPA violation was fatal to the plaintiffs' claim) (citation omitted); *Hepler v. Washington Mut. Bank, F.A.*, No. CV 07–4804 CAS (Ex.), 2009 WL 1045470, *4–*5 (C.D. Cal. Apr. 17, 2009) (citing *Spencer v. Hutchens* 471 F. Supp. 2d 548, 554 (M.D.N.C. 2006)).

First, it is clear that not all of plaintiff's twenty-seven numbered requests relate to information covered under the RESPA because not all of the information sought relates to the servicing of the loan.  Specifically, requests for information regarding origination-related materials, the securitization of the loan, the lender's general policies and practices, and general complaints about the lending industry do not satisfy the RESPA's "servicing of [the] loan" requirement.  *See, e.g., Bray v. Bank of Am.*, No. 1:09-cv-75, 2011 WL 30307, *12 (D.N.D. Jan. 5, 2011) (citing *MorEquity v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000)); *Gates v. Wachovia Mortg., FSB*, No. 2:09-CV-2464, 2010 WL 2606511, *3 (E.D. Cal. June 28, 2010) (citing cases); *Arellano v. Am. Home Mortg. Servicing, Inc.*, No. 09-CV-5103, 2010 WL 2300986, *2 (N.D. Cal. June 4, 2010) (citing cases); *Williams v. Wells Fargo Bank, N.A., Inc.*, No. 10-CV-399, 2010 WL 1463521, *2 (N.D. Cal. Apr. 13, 2010); *Harris v. Am. Gen. Fin., Inc.*, No. Civ. A.

02-1395, 2005 WL 1593673, *3 (D. Kan. July 6, 2005). Some of plaintiff's requests, however, do relate to the servicing of her loan. Specifically, plaintiff's requests for information regarding payments applied to her loan at various times, "fees" that were charged to the account, and her current interest rate, all request information relating to servicing. As such, contrary to defendant's assertion, plaintiff's letter constituted a qualified written request under the RESPA. *See Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (citing *In re Thorian*, 387 B.R. 50, 70 (D. Id. 2008)).

However, contrary to plaintiff's allegations, defendant's response to plaintiff's qualified written request satisfied the substantive requirements of the RESPA. Specifically, defendant's response contained the following information: (1) the total amount of the current arrearage, broken down into missed installments, late fees and other fees; (2) when installments are due and why late fees may be assessed; (3) a complete loan history documenting the transaction dates (with effective dates if applicable), giving brief descriptions of next due dates, principal balances, escrow transactions, and how funds were applied; (4) how interest is calculated; (5) the fact that the current interest rate was 9.5%; and (6) a copy of the adjustable rate note and mortgage for plaintiff's review. *See* Dkt. No. 57-11. Moreover, defendant adequately explained why it could not furnish the other information that plaintiff requested and why some of the requested information does not relate to the "servicing" of her loan. *See id.*

As such, as to each of plaintiff's requests that related to servicing of her loan, defendant complied with the RESPA.

Finally, as defendant correctly notes, plaintiff has failed to allege in her complaint or otherwise establish that she suffered any actual damages from the alleged RESPA violations. *See* Dkt. No. 1 at ¶¶ 55-57. Although plaintiff continues to maintain that defendant violated the

RESPA in her response to defendant's motion for summary judgment, plaintiff fails to respond to defendant's assertion that she failed to establish that she was actually damaged by any violation or that defendant has exhibited a pattern of noncompliance making her entitled to statutory damages. *See* Dkt. No. 56-1 at 21; Dkt. No. 59 at 9-10.  Plaintiff's failure to establish that she suffered actual damages from the alleged RESPA violations is fatal to her claim.  *See* 12 U.S.C. § 2605(f); *see also In re Griffin*, No. 10-22431, 2010 WL 3928610, *4 (Bankr. S.D.N.Y. Aug. 31, 2010) (holding that "[t]o have a viable cause of action under RESPA, however, individuals must show not only the failure to comply with the provisions of Section 2605, but also actual damages to the borrower as a result of the failure, as set forth in 2605(f)(1)(A), as well as any additional damages that the court may allow in the case of a pattern or practice of noncompliance with the requirements of Section 2605, in an amount not to exceed 1,000 dollars.  Thus, the courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff" (citations omitted)); *see also Gorham v. Bank of Am., N.A.*, No. 1:09-CV-1150, 2010 WL 1704829, *4 (N.D.N.Y. Apr. 28, 2010) (citations omitted).

Based on the foregoing, the Court grants defendant's motion for summary judgment as to plaintiff's RESPA claims relating to her qualified written request.

### 3. Excessive and unearned fees

In her complaint, plaintiff alleges that defendant charged her "excessive and unearned fees in violation of 12 USC 2605."  *See* Dkt. No. 1 at ¶ 56(b).  As defendant correctly points out, however, "[n]othing in 12 U.S.C. § 2605 governs the charging of fees and, accordingly,

[plaintiff]'s claim has no basis in law." *See* Dkt. No. 56-1 at 22.  Plaintiff does not argue

otherwise in her response.

Based on the foregoing, the Court grants defendant's motion for summary judgment as to

plaintiff's RESPA claim relating to "excessive and unearned fees." *See Ballard*, 2011 WL

1664980, at *10 (finding claim abandoned where the plaintiff failed to respond to the defendants'

motion for summary judgment as to that claim) (citation omitted); *see also Di Giovanna*, 651 F.

Supp. 2d at 208 (citing cases).


### *4. Credit reporting*

In her complaint, plaintiff alleges that defendant placed "incorrect and derogatory

information on [her] credit report before the statutory mandated time frame." *See* Dkt. No. 1 at ¶

56(d).  Defendant asserts that it did not provide information regarding plaintiff's loan to any

consumer reporting agency during the sixty-day period after its receipt of plaintiff's November

2008 letter, or at any other time.  *See* Dkt. No. 56-2 at ¶¶ 38-39; *see also* Dkt. No. 57 at ¶¶ 32-33.

Section 2605(e)(3) provides that,

> [d]uring the 60-day period beginning on the date of the servicer's
> receipt from any borrower of a qualified written request relating to a
> dispute regarding the borrower's payments, a servicer may not
> provide information regarding any overdue payment, owed by such
> borrower and relating to such period or qualified written request, to
> any consumer reporting agency[.]

12 U.S.C. § 2605(e)(3).

Plaintiff's bare allegations are insufficient to survive summary judgment.  Plaintiff fails to

contradict defendant's statement of material facts in this regard, *see* Dkt. No. 59-1, and the record

is otherwise devoid of any evidence supporting plaintiff's bald assertions.

Based on the foregoing, the Court grants defendant's motion for summary judgment as to plaintiff's RESPA claim relating to the alleged improper reporting of information to a consumer reporting agency during the statutorily-prohibited time.

**D.     Plaintiff's TILA claims**

In Count III of the complaint, plaintiff asserts that defendant violated TILA by misstating her loan balance on the "variable rate adjustment disclosure" that it sent pursuant to 12 C.F.R. § 226.20(c)(4).  *See* Dkt. No. 1 at ¶ 60.  Specifically, plaintiff claims that, "[a]s a result of the imposition of unauthorized or inflated charges, Defendants failed to adequately disclose the loan balance.  Defendants' disclosures state a loan balance that is higher than it would have been but [for] Defendants['] improper charges."  *See id.* at ¶ 61.  Defendant asserts that it provided plaintiff with proper notice of interest rate changes and, therefore, did not violate TILA.  *See* Dkt. No. 56-1 at 23-24.

In her response to defendant's motion for summary judgment, plaintiff fails to respond to defendant's arguments regarding why her TILA claim should be dismissed.  As such, the Court finds that plaintiff has abandoned her TILA claim.  *See Ballard*, 2011 WL 1664980, at *10 (citation omitted); *see also Di Giovanna*, 651 F. Supp. 2d at 208 (citing cases).

**E.     Plaintiff's state-law breach of contract claim**

In Count IV of the complaint, plaintiff alleges that "[d]efendants imposed or collected amounts that are not due and owing by contract including, but not limited to, default-related fees, costs and charges."  *See* Dkt. No. 1 at ¶ 66.  Moreover, plaintiff claims that "[d]efendants misapplied or failed to apply payments, or imposed late fees and other charges not due, all in

25

breach of its contracts with Plaintiff[.]" *See id.* at ¶ 67.[10]  Defendant contends that plaintiff's

breach of contract claim is based on an apparent mathematical miscalculation by her, and is

otherwise not a valid claim.  *See* Dkt. No. 56-1 at 12.  Moreover, defendant asserts that, because

plaintiff never paid for any of the disputed fees, she has not suffered any legally recoverable

damages.  *See id.* at 14 (citations omitted).

Application of supplemental jurisdiction is discretionary and "it requires a balancing of the

considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless

decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir.

1979) (citation omitted).  Under the circumstances of this case and in the interest of judicial

economy, the Court will exercise supplemental jurisdiction over plaintiffs' state-law breach of

contract claim.  *See McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 411 n.3

(E.D.N.Y. 2009) (citations omitted).

"The elements of a breach of contract claim in New York are (1) the existence of a

contract, (2) performance by the party seeking recovery, (3) non-performance by the other party,

and (4) damages attributable to the breach." *RCN Telecom Serv., Inc. v. 202 Ctr. St. Realty LLC*,

156 Fed. Appx. 349, 2005 WL 3076885 (2d Cir. Nov. 17, 2005) (citing *Marks v. New York Univ.*,

61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999); *accord First Investors Corp. v. Liberty Mut. Ins. Co.*, 152

F.3d 162, 168 (2d Cir. 1998) (citation omitted).

---

[10] In her response to defendant's motion for summary judgment, plaintiff provides the
Court with little guidance with respect to this claim.  Specifically, all that plaintiff asserts in her
response is that "[d]efendants have an absolute statutory duty under 24 CFR 3500.17 to keep a
consumer informed of the proper amount to pay.  This duty is also in the Note and Mortgage
Contract.  Most spectacular is that even a five cent discrepancy in payment can result in a servicer
such as [defendant] returning . . . a consumer's check and starting a foreclosure action–one nickel
is a default under the terms of the mortgage and Note." *See* Dkt. No. 59 at 15.

Again, plaintiff provides the Court with no guidance regarding why she believes that defendant breached the contract.  Although she claims that defendant has "an absolute statutory duty," which was also included in the terms of the contract, "to keep a consumer informed of the proper amount to pay," plaintiff provides the Court with no evidence and fails to point to anything in the record to support her allegation that defendant breached this duty.  As discussed above, the evidence before the Court establishes that defendant did keep plaintiff correctly informed about the "proper amount to pay."  Moreover, plaintiff has failed to dispute that defendant properly imposed late fees for payments that it received after the contractually-defined grace period or that it imposed fees in excess of those permitted by the contract.  Plaintiff has failed to come forward with any admissible evidence to refute defendant's arguments, which are fully supported by the record.

Based on the foregoing, the Court grants defendant's motion for summary judgment as to plaintiff's breach of contract cause of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: June 15, 2011
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

28